UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                                       :
                                                             :     **Chapter 15**
**MEGA NEWCO LIMITED,**                                      :
                                                             :     **Case No. 24-12031 (MEW)**
       Debtor in a Foreign Proceeding    :
------------------------------------------------------------x

## DECISION GRANTING RECOGNITION OF A FOREIGN PROCEEDING AND ENFORCING AN ORDER APPROVING A SCHEME OF ARRANGEMENT

A P P E A R A N C E S:

CLEARY GOTTLIEB STEEN & HAMILTON LLP
New York, NY
*Attorneys for the Debtor and Foreign Representative*
   By: David H. Botter, Esq.
      Thomas S. Kessler, Esq.
      Miranda Hatch, Esq.
      Carla Martini, Esq.
      Kaleinanni Nallira, Esq.

LATHAM & WATKINS LLP
New York, NY
*Attorneys for the Ad Hoc Group of Noteholders*
   By: Adam J. Goldman, Esq.
      Jonathan J. Weichselbaum, Esq.
      David Hammerman, Esq.

OFFICE OF THE UNITED STATES TRUSTEE
New York, NY
   By: Andrea B. Schwartz, Esq.

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

Mega Newco Limited ("**Mega Newco**") is a wholly owned subsidiary of a Mexican financial services company named Operadora de Servicios Mega, S.A. De C.V., Sofom, E.R. (the "**Parent**"). Mega Newco was formed under the laws of England and Wales on September 30, 2024, for the purpose of assisting its Parent in the completion of a restructuring of obligations

1

under a set of notes (the "**U.S. Notes**") that the Parent issued in 2020 under an Indenture that is governed by New York law.  Mega Newco has asked this Court (i) to grant recognition of a foreign proceeding (the "**English Scheme Proceeding**") that Mega Newco commenced in the High Court of Justice Business and Property Courts of England and Wales (the "**English Court**"), and (ii) to enforce, in the United States, an order entered by the English Court (the "**English Court Order**") that approved the scheme of arrangement (the "**Scheme of Arrangement**") that Mega Newco proposed.

The Parent is based in Guadalajara, Mexico and has its headquarters there.  For various reasons, the Parent faced liquidity constraints and needed to restructure its obligations, including its obligations under the U.S. Notes.  The Parent negotiated with an ad hoc group of noteholders that collectively owned more than 25 percent of the outstanding U.S. Notes, and the parties reached agreement on the terms of a possible restructuring at some time during 2024.  I will not attempt to describe in full the deal that the parties reached, but it provides that holders of the U.S. Notes may choose to receive either partial cash payments from the Parent or to receive equity in the Parent in exchange for their U.S. Notes.  The agreement also gives certain holders of the exiting U.S. Notes the opportunity to buy new notes to be issued by the Parent.

The Parent has also negotiated consensual arrangements to refinance and restructure other debt obligations. Those other agreements are contingent on the completion and enforcement of the agreed restructuring of the U.S. Notes.  Together all of these negotiated restructurings will improve creditor recoveries, strengthen the finances of the Parent, and preserve the value of the operating business.

However, the agreed restructuring of the U.S. Notes raised practical problems.  The U.S. Notes could not be restructured outside of a bankruptcy proceeding except with the affirmative

2

consent of one hundred percent of the holders of the U.S. Notes. As a general matter it is not possible to obtain that level of affirmative consent to a note restructuring, and that is particularly so in this case, where dealings with some of the holders of the U.S. Notes are constrained because they are what the Debtor has referred to as "Sanctioned Persons." Bankruptcy laws would permit a restructuring of the U.S. Notes without one hundred percent consent, but most of those laws would not have permitted a surgical restructuring of just the U.S. Notes. However, U.K. laws permit the approval of a consensual scheme of arrangement that deals with a single set of note obligations, and pursuing such a scheme of arrangement in the English Court also promised to be less expensive and time-consuming than other alternatives. The parties therefore wished to implement the desired restructuring of the U.S. Notes through the English Court under a U.K. scheme of arrangement.

U.K. courts have held that they have jurisdiction to approve a scheme of arrangement so long as the debtor has a substantial connection with the U.K., which may include the presence of a registered office or the fact that the relevant obligations are governed by U.K. laws. However, the Parent did not have its registered office in the U.K.; the U.S. Notes are governed by New York law (not English law); and the Parent had no substantial business operations or facilities in the U.K. Counsel conceded during the hearing that I held on February 7, 2025, that the Parent therefore would not have had the right, in its own name and on its own behalf, to seek approval of a proposed scheme of arrangement by the English Court.

Mega Newco was created to address this issue. More particularly:

- Mega Newco was incorporated on September 30, 2024, under the laws of England and Wales, and listed its registered office as an address in London.

3

- Mega Newco signed documents by which it made itself an additional obligor under the U.S. Notes. Mega Newco also agreed that the Parent could seek contribution from Mega Newco for any payment made by the Parent on the U.S. Notes.

- Mega Newco then filed the necessary papers to commence the English Scheme Proceeding on November 14, 2024. Mega Newco also commenced this Chapter 15 proceeding in November 2024.

The papers submitted to the English Court made clear that Mega Newco was created for the purpose of enabling the English Court to take jurisdiction over the proposed scheme of arrangement. The English Court has approved the exercise of jurisdiction on this basis, and it has approved Mega Newco's proposed Scheme of Arrangement, including those provisions that resolve the noteholders' claims against the Parent as well as against Mega Newco. The holders of U.S. Notes had the right to appear at a meeting that was convened to solicit votes with respect to the proposed Scheme of Arrangement, and the holders of more than seventy-five percent of the U.S. Notes appeared either in person or through proxies. The Scheme of Arrangement was approved unanimously by those who voted, and no objections were filed with the English Court.

No party has objected to the proposed recognition of the English Scheme Proceeding in this Chapter 15 case, or to the enforcement, in the United States, of the English Court Order and the Scheme of Arrangement. The Office of the United States Trustee raised some issues about the release provisions in the Scheme of Arrangement, but it has reached an agreement with the Debtor on a modification to those provisions insofar as they would be given effect in the United States. No other issues have been raised.

Under Chapter 15, a foreign bankruptcy or insolvency proceeding may be recognized, and the orders entered in such a proceeding may be enforced, if the foreign proceeding is either a

4

"foreign main proceeding" or a "foreign nonmain proceeding." 11 U.S.C. § 1517(a)(1). A foreign proceeding is a "foreign nonmain proceeding" if it is pending in a country in which a debtor has an "establishment." I issued a decision in *In re Mood Media Corp.*, 569 B.R. 556, 561-63 (Bankr. S.D.N.Y. 2017), in which I held that for this purpose an "establishment" must be an actual place from which economic market-facing activities are regularly conducted. However, Mega Newco represented to the English Court that it has never engaged in any business, let alone any regular market-facing activities that it conducted from a location in the U.K. Mega Newco has engaged in restructuring activities, but those activities are not themselves sufficient to show the existence of an "establishment" in the U.K. If restructuring activities alone were sufficient, then any proceeding in which a debtor sought relief would automatically qualify as a "foreign nonmain proceeding," and the requirement of an "establishment" would be deprived of any meaning. *See Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1028 (5th Cir. 2010) (holding that if a foreign "bankruptcy proceeding and associated debts, alone, could suffice to demonstrate an establishment, this would render the framework of Chapter 15 meaningless. There would be no reason to define establishment as engaging in a nontransitory economic activity. The petition for recognition would simply require evidence of the existence of the foreign proceeding."); *see also In re Modern Land (China) Co.*, 641 B.R. 768, 785-86 (Bankr. S.D.N.Y. 2022) (holding that a foreign restructuring proceeding "cannot itself constitute nontransitory economic activity to support recognition as a foreign nonmain proceeding"); *Rozhkov v. Pirogova (In re Pirogova)*, 612 B.R. 475, 484 (S.D.N.Y. 2020) (same).

A foreign proceeding is a "foreign main proceeding" if it is taking place in the jurisdiction where the debtor has its center of main interests, or COMI. 11 U.S.C. § 1502(4). Section 1516(c) of the Bankruptcy Code provides that "[i]n the absence of evidence to the

5

contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). Mega Newco's registered office is in London. Unlike some other cases, there is no "contrary evidence" in the record before me that indicates that Mega Newco's own COMI is located outside the United Kingdom. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 129-30 (Bankr. S.D.N.Y. 2007) (holding that other evidence before the Court showed that the debtor's COMI was not situated where the debtor had contended). Mega Newco has engaged in restructuring activities in the U.K., and those may be considered in determining whether its COMI is in the U.K. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 138 (2d Cir. 2013). These restructuring activities apparently are the only activities in which Mega Newco has ever engaged.

       As a matter of form, then, Mega Newco argues that the requirements for recognition of the English Scheme Proceeding as a "foreign main proceeding" have been satisfied. I nevertheless cannot help but see significant risks in the structure that has been used here. Chapter 15 is premised on the idea that a debtor who seeks to restructure an obligation is actually the subject of a foreign proceeding, and that the foreign proceeding is located in the country where that debtor has its COMI. Here, the whole structure admittedly was created for the purpose of restructuring the U.S. Notes issued by the Parent. However, the Parent is not a party to the English Scheme Proceeding, and the Parent's COMI is in Mexico, not the U.K. Mega Newco was created, and then voluntarily subjected itself to the Parent's liabilities under the U.S. Notes, just so that the U.S. Notes issued by the Parent could be restructured in a jurisdiction that was not otherwise available.

       If we were routinely to allow this structure in all cases, no matter what the circumstances, the ordinary predicates for Chapter 15 relief could be stripped of meaning. Any debtor company

6

could restructure its obligations anywhere it chose without even subjecting itself to a foreign proceeding. All that a debtor would need to do is to form a new subsidiary in a jurisdiction of its choice and then cause that new subsidiary to assume the parent company's obligations. The parent company's COMI would no longer be relevant to the parent's restructuring of its debts. The laws of the chosen jurisdiction would govern a restructuring, no matter how those laws might affect the legitimate expectations of creditors and regardless of whether the debtor had chosen a particular jurisdiction for the purpose of favoring insiders or for other improper reasons.

Courts and commentators have long worried about instances in which a debtor might try to manipulate its COMI, fearing that such a manipulation could be done to thwart creditor expectations or to accomplish other improper objectives. *See, e.g., In re Fairfield Sentry Ltd.*, 440 B.R. 60, 65-66 (Bankr. S.D.N.Y. 2010) (identifying concerns and explaining that courts may make a broader assessment of COMI if there has been an "opportunistic shift to establish COMI (i.e., insider exploitation, untoward manipulation, overt thwarting of third party expectations.)"); *see also In re Modern Land (China) Co.,* 641 B.R. 768, 782-83 (Bankr. S.D.N.Y. 2022) (same); *In re Ocean Rig UDW Inc.*, 570 B.R. 687 (Bankr. S.D.N.Y. 2017) (same). The issue before me, then, boils down to this: does the underlying structure in this case constitute such an improper manipulation of COMI? Should I disregard the form of the transactions and disregard the participation by Mega Newco, and look instead to whether the Parent, on its own, has satisfied the conditions for relief under Chapter 15?

Clearly, the structure before me could be used in another case as a way of frustrating and thwarting the legitimate expectations of creditors. This case, however, involves no such frustration or thwarting of creditor rights. Mega Newco was formed, and the English Scheme Proceeding was pursued, for laudable objectives. The Scheme of Arrangement will enable a

7

broader restructuring to be accomplished efficiently and thereby will enhance all parties' recoveries. It will also maximize the value of the underlying businesses. In these respects, the enforcement of the Scheme of Arrangement is fully consistent with the stated purposes of Chapter 15. *See* 11 U.S.C. § 1501(a).

In addition, the procedures that the parties have followed were not implemented in any way that took unfair advantage of the holders of the U.S. Notes. The whole process was worked out with the involvement and consent of the affected creditors, and not for the purpose of harming them or of thwarting their expectations. The Noteholders and their Indenture Trustee are aware of the basis on which U.K. jurisdiction has been asserted and have not objected to it. There similarly is not a single objection to the recognition of the U.K. proceeding or the enforcement of the U.K. order.

If COMI manipulation is a matter of concern because of the risk that creditors' rights and expectations might be thwarted, then one of the main factors I ought to consider, in deciding whether such a manipulation has occurred, is whether the affected creditors have asserted any objection. *See In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006) (holding that COMI determinations should not be made "mechanically," that COMI should be assessed "in light of chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value," that creditors presumably are in the bast position to determine whether their own expectations are being thwarted, and therefore that "one generally should defer . . . to the creditors' acquiescence in or support of a proposed COMI"). Ironically, the only thing that would thwart creditor expectations in the case before me would be if I were to decline to enforce the English Court Order. It would

8

be absurd for me to thwart the creditors' constructive desires and expectations in the guise of supposedly protecting them.

If there were an actual contention or evidence that the structure at issue here had been used in an unfair way and had thwarted third-party expectations, there would be serious questions in my mind as to whether it ought to be approved. However, in light of the support of all of the affected parties and their overwhelming consent to the English Scheme Proceeding and the approval of the Scheme of Arrangement, and the other factors that I have cited, I see no cause in this particular case to look past the form of the transactions or to pursue theoretical issues that no affected party wishes to pursue. I will therefore recognize the English Scheme Proceeding and enforce the English Court Order.

A separate Order has been issued to reflect the Court's rulings.

Dated: New York, New York
      February 24, 2025

**s/Michael E. Wiles**
Honorable Michael E. Wiles
United States Bankruptcy Judge
